

**FILED** NF
7/11/2016
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| DAVID A. BERTHA | } | 1:16-cv-04982 |
|  | } | Judge Harry D. Leinenweber |
| Plaintiff | } | Magistrate Judge Jeffrey T. Gilbert |
|  | } |  |
| - v.- | } | Case No:_____ |
|  | } |  |
| KANE COUNTY STATE'S ATTORNEY'S | } |  |
| OFFICE, KANE COUNTY SHERIFF'S | } |  |
| OFFICE, MICHAEL SULLIVAN, JUDITH | } |  |
| BRAWKA, JOHN BARSANTI, ELIZABETH | } |  |
| FLOOD, JOHN NOVERINI, ROBERT | } | **RECEIVED** |
| BEADERSTADT, ROBERT WILBRANDT, | } |  |
| JOSEPH MCMAHON, SALVATORE | } | MAY 0 5 2016 EW |
| LOPICCOLO, DONALD KRAMER, RITA | } |  |
| GARMAN, ALEXANDRA TSANG | } | THOMAS G. BRUTON |
|  | } | CLERK, U.S. DISTRICT COURT |
| Defendants | } |  |

---

## COMPLAINT UNDER THE CIVIL RIGHTS ACT

---

### Jurisdiction

I.    Plaintiff claims federal jurisdiction pursuant to Article III Section 2 which extends the jurisdiction to cases arising under the U.S. Constitution.

II.    Plaintiff brings this suit pursuant to Title 42 U.S. Code Section 1983 for violations of certain protections guaranteed to him by the First, Fourth, Eighth and Fourteenth Amendments of the federal Constitution, by the defendants under the color of law in their capacities as employees of Kane County, McHenry County and as individuals.

III.    Plaintiff has filed the following lawsuits in state court:

A.    David A. Bertha vs. Daily Herald Newspaper, Case #14-L-199

B.    Date of filing:    April 24, 2014

C.    Plaintiff:    David A. Bertha

D.    Defendants:    Daily Herald Newspaper and Harry Hitzeman

1

E.     Court lawsuit filed in:    Kane County Court

F.     Judge assigned:    Edward Schreiber

G.     Claim made:    Defamation per se

H.     Disposition of case:    Dismissed for want of prosecution

I.     Date of disposition:    August 14, 2014

J.     David A. Bertha vs. Daily Herald Newspaper, Case #15-L-371

K.     Date of filing:    August 14, 2015

L.     Plaintiff:    David A. Bertha

M.     Defendants:    Daily Herald Newspaper and Howard Hitzeman

N.     Court lawsuit filed in:    Kane County Court

O.     Judge assigned:    Mark Pheanis

P.     Claim made:    Defamation per se

Q.     Disposition of case:    Pending

**Parties**

IV.     Plaintiff:      David A. Bertha, 9242 S. Constance, Chicago, IL 60617.

V.     Defendants:

A.     Kane County State's Attorney's Office is a municipal entity, 37W777 Illinois Route 38, St. Charles, IL 60175.

B.     Kane County Sheriff's Office is a municipal entity, 37W755 Illinois Route 38, St. Charles, IL 60175.

C.     Michael Sullivan in his official capacity as a state judge for McHenry County, 2200 N. Seminary Ave., Woodstock, IL 60098.

D.     Judith Brawka in her individual capacity as a state judge for Kane County, 37W777 Illinois Route 38, St. Charles, IL 60175.

E.     John Barsanti in his individual capacity as a state judge for Kane County, 37W777 Illinois Route 38, St. Charles, IL 60175.

2

F.      Elizabeth Flood in her individual capacity as a state judge for Kane County, 37W777 Illinois Route 38, St. Charles, IL 60175.

G.      John Noverini in his individual capacity as a state judge for Kane County, 100 S. Third Street, Geneva, IL 60134.

H.      Robert Beaderstadt in his individual capacity as a state judge for McHenry County, 2200 N. Seminary Ave., Woodstock, IL 60098.

I.      Robert Wilbrandt in his individual capacity as a state judge for McHenry County, 2200 N. Seminary Ave., Woodstock, IL 60098.

J.      Joseph McMahon in his individual capacity as the state's attorney for Kane County, 37W777 Illinois Route 38, St. Charles, IL 60175.

K.      Salvatore LoPiccolo in his individual capacity as an assistant state's attorney for Kane County, 37W777 Illinois Route 38, St. Charles, IL 60175.

L.      Donald Kramer in his official capacity as sheriff of Kane County, 37W755 Illinois Route 38, St. Charles, IL 60175.

M.      Rita Garman in her official capacity as the chief judge of the Illinois Supreme Court, 200 E. Capitol, Springfield. IL 62701.

N.      Alexandra Tsang in her individual capacity as a director for Kane County, 540 S. Randall Road, St. Charles, IL 60174.

## Statement of Claims

VI.     On October 20, 2013, the plaintiff was an Illinois licensed attorney attempting to see a client who was an inmate at the Kane County Judicial Center (KCJC), 37W755 Illinois Route 38, St. Charles, IL when he was ordered to leave and not return by sheriff's deputies Corey Hunger and Donald Smith. Donald Smith verbally assaulted the plaintiff with threats of arrest because the plaintiff referred to him as an "asshole". David Thorgeson was one of several deputies that investigated this incident. KCJC is a publicly owned building. The plaintiff was not arrested for any crime and peacefully left the premises.

VII.    On October 26th, the plaintiff returned to the KCJC and was arrested for criminal trespassing because he was allegedly banned from the facility by Corey Hunger. The sheriff's deputies that arrested the plaintiff were led by Charlie Conklin, John Grimes, Scott McKanna, Perparim Osmani and Andrew Schwab arising in Case #13-CM-4615. Civil rights legislation is so well established that no reasonable sheriff's deputy could have believed that they, the sheriff, or any of his other deputies had the authority to ban a citizen from a public place without due process.

VIII.   The next day the plaintiff returned to the KCJC after he had bailed himself out and

3

was again arrested for criminal trespassing by sheriff's deputies, but this time his arrest was led by Thomas Durham, Scott Flowers, Brandon Gentry and William Gatske arising in Case # 13-CM-4553. The plaintiff stopped attempting to see his client once he was afforded due process at bond court and there was a court order restricting his access to KCJC as a condition of bail.

      A.     On January 10, 2014, the plaintiff was convicted of trespassing in Case # 13-CM-4553 by Elizabeth Flood, a state judge from Kane County. The plaintiff represented himself at trial and argued that the State lacked probable cause for the arrest because he had a constitutional right to peacefully enter a public building free from unreasonable search and seizure. Four sheriff's deputies testified against him. Thorgeson and Smith testified to events that occurred on October 20, 2013. Grimes and Conklin testified to events that occurred on October 26th. No one testified to the events that occurred the next day. The State failed to produce a court or an administrative order restricting the plaintiff's access to KCJC on October 27th because none existed. The plaintiff was convicted based solely on hearsay evidence.

      B.     The plaintiff filed motions on February 7, 2014, to appoint a special prosecutor, vacate the judgment in Case #13-CM-4553, dismiss Case #13-CM-4615 and to substitute Judge Flood for cause. A judge does not need to testify at a hearing to replace them for cause, but may instead submit an affidavit. After two scheduled hearing dates on the issue on February 14th and March 13th, Judge Flood finally submitted an affidavit to the court on March 27th. Judge Flood falsely claimed in it that she was unaware that the plaintiff had two pending trespassing complaints against him at the time of his trial. She is not entitled to immunity because providing false information in a criminal case is not a judicial act. As stated earlier, Conklin and Grimes testified at the plaintiff's trial for Case #13-CM-4553 about the events surrounding his arrest for Case #13-CM-4615.

      C.     A Kane County sheriff's deputy, Jack Pearson, ordered the plaintiff to leave and not return to the KCJC following the March 13th court hearing before a Kane County state judge, John Noverini, when the plaintiff took a seat in the lobby after court. The plaintiff peaceably left after he was verbally assaulted with threats of another arrest for trespassing by Pearson.

      D.     The plaintiff later withdrew his motion to substitute judges on April 14th. Under the applicable statute, the plaintiff's cases should have returned to Elizabeth Flood who was the trial judge. Judith Brawka did not allow him to perform this legal maneuver in retaliation for his alleging that Judge Flood may have been guilty of judicial misconduct and *ex parte* letters that personally insulted Judge Brawka.

      E.     Judge Brawka was the chief judge of Kane County at that time. The chief judge cannot review decisions made by other judges, direct other judges in their rulings or intervene in cases assigned to other judges. The chief judge may only act in cases that are properly pending before them. However, Judge Brawka entered *ex parte* communication as relevant to the plaintiff's fitness in his trespassing cases. These cases were not properly pending before her. She is not entitled to immunity because she was acting in an administrative role.

      F.     On April 18th, Judge Noverini failed to transfer the plaintiff's cases to

4

Judge Flood or hold a hearing on the plaintiff's pending motions to appoint a special prosecutor, vacate the judgment in Case #13-CM-4553 or dismiss Case #13-CM-4615. Instead, he ordered the plaintiff to submit to a fitness evaluation based on *ex parte* letters that he was not supposed to consider, allow or admit into evidence. This was not a judicial act. This was done in retaliation for an ex parte letter the court received that personally insulted Judge Noverini.

      G.     Joseph McMahon, the state's attorney from Kane County, attended this hearing in person. He was personally insulted in the other *ex parte* letter that was entered into evidence.

      IX.     McMahon by and through his assistant state's attorney, Salvatore LoPiccolo, filed a petition that LoPiccolo signed as the complaining witness against the plaintiff for adjudication on four counts of direct criminal contempt on May 5th for motions that the plaintiff filed with the court. LoPiccolo had never appeared at any of the plaintiff's previous court hearings. The plaintiff did not appear before Judge Noverini nor Judge Flood on May 5th. Neither had ordered the plaintiff to amend any of his motions because they had found them offensive. McMahon and LoPiccolo are not entitled to immunity because they were acting as complaining witnesses, violating the plaintiff's right to free speech, stifling his defense, and not acting as a prosecutors.

      A.     A state judge from Kane County, John Barsanti, issued an arrest warrant for the plaintiff based on LoPiccolo's complaint. The plaintiff has never appeared before Judge Barsanti. He took action in a case that was not properly pending before him. He is not entitled to immunity because his actions were taken without jurisdiction.

      B.     Then the Illinois Supreme Court, at the request of Judith Brawka, by and through its chief judge, Rita Garman, found it in the State's best interest to appoint an out-of-circuit judge to prosecute the plaintiff when the State did not have probable cause to proceed to trial. She is not entitled to immunity because this was not a judicial act. She was acting in her role as an administrator.

      C.     The chief judge of McHenry County, Michael Sullivan, appointed McHenry County state judge, Robert Beaderstadt, as presiding judge. Beaderstadt did not have jurisdiction to impose a judgment for contempt because the State failed to provide prima facie evidence that the trial judges found the defendant's conduct contemptuous.

      X.     On August 28th, sheriff's deputy Jack Pearson again ordered the plaintiff to leave and not return to the KCJC following a court hearing. Pearson followed the plaintiff and his parents onto an elevator. When the plaintiff took a seat in the lobby instead of immediately exiting, Pearson threatened to arrest the plaintiff. Several other officers responded. One of them, John Grimes, began physically assaulting the plaintiff by attempting to push him out of the building. The plaintiff peacefully resisted and stood his ground, but eventually left on his own accord.

      XI.     Several sheriff's deputies led by Gregory Flowers, Chad Calhoun, Gordan Sheehan and John Grimes were waiting in the plaintiff's courtroom on September 29th. The plaintiff had filed a motion to substitute Judge Beaderstadt for cause. Beaderstadt immediately

dismissed the plaintiff's motion unilaterally when a hearing should have been held by a judge that was not named in the motion. During a courtroom recess the plaintiff was ordered to sit down by Grimes. Grimes began to try and pull the plaintiff to his seat by his clothes when the plaintiff refused to sit. Sheehan then placed the plaintiff in a choke hold when the plaintiff peacefully resisted Grimes' assault. He released the choke hold once the plaintiff sat down.

XII. On November 7th, Judge Noverini ordered the plaintiff held in custody for a week to undergo a fitness evaluation. The plaintiff had a right under the applicable statute to refuse to cooperate with the person conducting the examination and the record reflects that the person conducting it, Alexandra Tsang, testified that she could complete it without his cooperation. The plaintiff continued his refusal to cooperate with Dr. Tsang while in custody.

XIII. On January 22, 2015, a state judge from McHenry County, Robert Beaderstadt, convicted the plaintiff of direct criminal contempt after a bench trial. The State did not introduce any evidence signed by the trial judges. The trial judges did not testify. The plaintiff represented himself at trial and argued that no judge can impose punishment for direct contempt based on conduct that the trial judge did not find contemptuous.

A. The plaintiff requested a continuance before sentencing. His motion was denied. He was sentenced to 8 months in jail after a bench trial when he was entitled to a jury trial for any sentence over 6 months.

B. The plaintiff was immediately taken into custody. Donald Kramer was the sheriff of Kane County at this time. Several sheriff's deputies attended this hearing. Perparim Osmani began videotaping the plaintiff's arrest. The plaintiff was strip-searched on camera. The plaintiff was not charged with a drug related crime. He was not charged with a violent crime. No reasonable sheriff's deputy could have believed that the plaintiff was smuggling a weapon or drugs into the jail. In addition, Scott Flowers physically assaulted the plaintiff while the plaintiff was in handcuffs and Flowers was transferring him to jail by pushing him into a wall and placing his arms in a painful position

C. The plaintiff was immediately placed in a segregated housing unit under 23 hour a day lock down with restricted privileges. He was informed that this was done for disciplinary reasons. However, the plaintiff did not receive a written ticket, as is KCJC policy, for any violation of jail rules. Moreover, he was not afforded due process with an opportunity to appeal the decision to discipline him.

XIV. On January 27th, the plaintiff was found unfit to stand trial in his trespassing cases. Dr. Tsang completed a fitness evaluation without the plaintiff's cooperation. Rachelle Conant argued that the plaintiff was unfit to stand trial, against his wishes or the wishes of his family, despite the fact that he had stood trial 5 days earlier and represented himself in his contempt case. Conant had failed to call his family to testify that there is no history of mental illness in it, that the plaintiff did not personally have a history of mental illness and that the he had never taken psychotropic medication.

A. Conant also had failed to request a second opinion which the plaintiff had

6

a right to under the statute. The plaintiff informed his counsel several times that he would cooperate with a psychiatrist that was not employed by Kane County. Furthermore, she failed to draft any motions arguing that a fitness hearing was unnecessary because the State lacked probable cause to proceed to trial. In fact, she failed to file any motions at all. She also refused to adopt the motions that the plaintiff had drafted.

      B.     The State had the burden to prove that the plaintiff was fit. However, it was an assistant state's attorney from Kane County, Danielle Curtiss, who called Dr. Tsang to testify that the plaintiff was unfit. The plaintiff had alleged in previous motions that Curtiss may have been guilty of misconduct. It was in her best interest to argue that the plaintiff was unfit.

      XV.    The plaintiff was transferred from jail to Elgin Mental Health Center (EMHC) on March 10th. The plaintiff had filed several post-trial motions. One of them was to appear in court on a writ of habeas corpus on May 7th. The court made no ruling on the plaintiff's motion to appear in court. However, a continuance order until July 10th was written on that day. Judge Beaderstadt or someone else signed this order twice in two different handwritings.

      A.     On June 15th, Judge Noverini found that the plaintiff was restored to fitness in his trespassing cases and he was released from the EMHC. These cases were reassigned to another judge. These proceedings are now on hold until the appellate court rules on the plaintiff's appeal of a finding of unfitness.

      B.     On July 10th, a state judge from McHenry County, Robert Wilbrandt, who was now the presiding judge over the plaintiff's contempt case allowed the plaintiff's private attorney to withdraw. The plaintiff had fired her and wished to represent himself.

      XVI.   On August 14th, the plaintiff successfully argued that his conviction should be vacated. The court further found that, if found guilty at his retrial, all of the defendant's time would be considered already served. Judge Wilbrandt then appointed a public defender to represent the plaintiff even though he had a constitutional right to represent himself.

      A.     At the plaintiff's next court date on October 2nd, Judge Wilbrandt ordered the plaintiff to submit to a fitness evaluation. Alexandra Tsang was once again tasked with conducting it. The plaintiff again exercised his right to refuse to cooperate with her.

      B.     Rachelle Conant once again represented the plaintiff as his public defender. She again refused to draft any motions of her own arguing that the State lacked probable cause to proceed to trial, therefore, a fitness hearing was unnecessary. She again failed to file any motions of her own. She again failed to adopt the motions that the plaintiff drafted.

      XVII.  On December 11th, Judge Wilbrandt ordered the plaintiff held in custody for 7 days in order to undergo a fitness evaluation. This was done despite the facts that the plaintiff has a right to refuse to cooperate with the evaluation and that Dr. Tsang was able to complete a previous one without it.

      XVIII. On February 25, 2016, the plaintiff's attorney-client privileges were violated. Dr.

Tsang followed the plaintiff and his public defender into an attorney's room before a hearing. The plaintiff expressed his wish for Dr. Tsang to leave so that he could discuss his cases with his attorney in private. Rachelle Conant said that she would not discuss anything confidential with the plaintiff. Dr. Tsang refused to leave.

        A.     Attorney-client privilege is intended to protect a client who may wish to discuss confidential information with their attorney. Dr. Tsang included a detailed description of the plaintiff's conversation with his attorney in her fitness report. She once again found the plaintiff unfit and recommended inpatient treatment for up to one year.

        B.     This was done despite the fact that the plaintiff had successfully argued to vacate his prior conviction and consider his time already served.

### Relief

XIX.   The plaintiff asks that this Honorable Court find that the defendants abused the legal process in order to retaliate against the plaintiff. They banned him from a public building without due process. They initiated two trespassing cases without probable cause because he personally insulted a sheriff's deputy. They also initiated a contempt case without probable cause because the plaintiff had alleged misconduct by public officials and for personal insults contained in *ex parte* letters received by the court. Therefore, the plaintiff requests that this Court void all judicial orders in Case #14-CC-20 and dismiss it because the judges lack jurisdiction. Finally, he asks for Ten Million Dollars ($10,000,000.00) in damages.

XX.   The plaintiff demands that the case be tried by a jury.

### Certification

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the court.

Signed this 5th day of May, 2016

_David A. Bertha_
David A. Bertha

_David A. Bertha_
(Print Name)

9242 S. Constance
Chicago, Illinois 60617
tel. (773) 230-0579

8